# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| MILLER CONSTRUCTION EQUIPMENT SALES, INC., <br><br>  Plaintiff, <br><br> v. <br><br> CLARK EQUIPMENT COMPANY d/b/a DOOSAN INFRACORE CONSTRUCTION EQUIPMENT OF AMERICA, <br><br>  Defendant, <br><br> JCB, INC., <br><br>  Interested Party. | Case No. MC415-013 <br><br> (Pending in the United States District Court for the District of Alaska, Civil Action No. 1:15-cv-00007-HRH) |

## ORDER

JCB, Inc., a Savannah, Georgia area heavy equipment manufacturer, initiated this proceeding (a miscellaneous filing in this Court) to quash a Fed. R. Civ. P. 45 deposition subpoena served upon it by Clark Equipment Company, d/b/a Doosan Infracore Construction Equipment America ("Doosan"). Doc. 1. As the above caption shows, Doosan was sued in an Alaskan state court by Miller Construction Equipment Sales, Inc. ("MCESI"), and that case (removed to the

United States District Court for the District of Alaska) is ongoing. In fact, Doosan's subpoena originated from that underlying federal court action, but it was served on JCB in this District since this is where it is to be enforced or quashed.[1]

This Court stayed Doosan's subpoena (doc. 2) and initially granted JCB's quash motion as administratively unopposed per Local Rule 7.5 (no response means no opposition), but then granted Doosan a second chance to litigate the quash motion on the merits. *Miller Constr. Equip. Sales, Inc. v. Clark Equip. Co.*, ___ F. Supp. 3d ___, 2015 WL 5016504 (S.D. Ga. Aug. 21, 2015). The briefing has been extensive and, while the Court was considering it, Doosan moved to transfer this matter to the underlying District of Alaska action,

---

[1] As explained elsewhere:

> Subpoenas served on nonparties are governed by Fed. R. Civ. P. 45, which requires that "a subpoena must be issued by the court where the *underlying action* is pending, but challenges to the subpoena are to be heard by the district court encompassing the place where compliance with the subpoena is required." *Woods ex rel. United States v. SouthernCare, Inc.*, 303 F.R.D. 405, 406 (N.D. Ala. 2014). "When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f).

*Venus Med. Inc. v. Skin Cancer & Cosmetic Dermatology Ctr. PC*, 2016 WL 159952 at * 2 (D. Ariz. Jan. 14, 2016) (emphasis added).

insisting that it meets Rule-45(f)'s "exceptional circumstances" requirement for doing so. Doc. 22 at 1; *see also supra* n. 1. JCB opposes. Doc. 24.

## I. BACKGROUND

MCESI sued Doosan over what it alleges to be Doosan's constructive termination of MCESI's heavy construction equipment Dealer agreement with it.[2] CV115-007, doc. 29 at 6.[3] It has since moved for partial summary judgment on some of its claims and against Counts One, Two, and Three of Doosan's countclaims. Doc. 29. In support of that, MCESI General Manager Andrew H. Miller supplies some background facts which inform the motion before this Court:

> MCESI was formed in 2006 for the purpose of becoming the first Doosan equipment dealer in Alaska. From 2006 through the end of 2013, MCESI was the only Doosan heavy construction equipment dealer in Alaska. The Doosan dealerships were pursuant to the terms of a series of one year Dealer Sales Agreements that, by their terms, each expired on December 31st of the contract year.

---

[2] For purposes of this Order only, the Court is accepting as true the facts asserted in the parties' various filings, including MCESI's partial summary judgment motion filings in the Alaska case, CV115-007 docs. 29 & 31. Also, and for simplicity's sake, it will reference all MCESI-Doosan "Agreements" as "The Agreement." *See* doc. 1 at 44-45.

[3] The Court will cite to the District of Alaska court documents by prefacing the first in a series of documents with that court's docket number, CV115-007. It will do the same with documents from this proceeding, MC415-013.

MCESI's last executed Dealer Sales Agreement expired by its own terms on December 31, 2014. It was never renewed.

Doc. 31 at 2 ¶ 4 (Miller Declaration).

MCESI was not only unhappy about the non-renewal, but also with Doosan's relationship with Craig Taylor Equipment ("CTE"), a much larger equipment dealer in Alaska. Doosan had enabled CTE to become "a full Doosan dealer in CTE's Fairbanks office and to carry and promote Doosan products in its other offices which were located in MCESI's area of primary responsibility ('APR')." *Id.* ¶ 5. MCESI thus complained, and the MCESI/Doosan relationship continued to deteriorate as Doosan promoted CTE at MCESI's expense. *Id.* ¶ 7. Miller ultimately wrote "Doosan[,] indicating that MCESI would be pursuing its rights under Alaska's statute governing distributorships, AS §45.45.710-790." *Id.* at 3 ¶ 8.[4] Efforts to work things out failed,

---

[4] That statutory scheme protects dealers from certain distributor (hence, manufacturer) practices. *See* AS § 45.45.700 ("(a) A distributor may not coerce or attempt to coerce a dealer to perform certain acts by using duress or by threatening to terminate the distributorship agreement or another agreement between the distributor and the dealer."); *see also* AS § 45.45.790(2)(B) (a "distributor" includes any manufacturer).

Other sections address dealership-termination costs. *See* AS 45.45.710 ("Disposition of merchandise remaining upon contract termination"). That provision requires dealership-terminating distributors to pay the dealer: "(1) the fair market value for merchandise that is unused and for which the retailer has paid the

4

and MCESI sued Doosan for "effectively terminating MCESI's rights under its Dealer agreement by failing to renew MCESI's 2014 contract after it expired and [promoting CTE's interests at MCESI's expense]." *Id.* at 3-4, 6; *see also* doc. 1-2 at 7 (MCESI seeks over $3 million for

---

distributor, plus 100 percent of the transportation charges paid by the dealer to return the merchandise to the distributor," unless the dealer chooses to keep the distributor's merchandise. *Id.* And, while it is unclear if MCESI is invoking it, AS § 45.45.740 provides:

> (a) In addition to any purchase of merchandise required by AS 45.45.710, if a distributor terminates a distributorship agreement or makes *substantial changes in the competitive situation* of the distributor's dealer with regard to distribution of the merchandise or services that are the subject of the distribution agreement, the distributor shall
>
> > (1) purchase that portion of the dealer's business directly affected by the distributorship agreement or the change, including assets and machinery, at commercially reasonable business valuations; and
> >
> > (2) reimburse the dealer for the expenses that were necessarily incurred by the dealer
> >
> > > (A) for that portion of the dealer's business covered by the distributorship agreement; and
> > >
> > > (B) during the 12 months before the termination or change.
>
> (b) In this section, "change" does not include making a price change that affects similarly situated dealers equally.

AS § 45.45.740 (emphasis added). MCESI wants Doosan to repurchase its unsold Doosan equipment at fair market value. Doc. 29 at 7. It emphasizes that the purpose of this statute is "to protect Alaska companies from large manufacturers like Doosan in exactly the situation presented in this case." Doc. 29 at 18. Doosan reads MCESI's claims as extending to "recovery from Doosan of every expense that MCESI incurred in 2014 (except for the direct cost of products purchased from MCESI's other suppliers)." MC415-013, doc. 22-1 at 2 n. 2.

5

repurchase of equipment and payments for the value of lost business and its expenses). MCESI says its

> complaint raises simple statutory claims, under AS § 45.45.710-790, that follow from the termination of MCESI's dealer agreement and Doosan's actions in allowing CTE to become a competing dealer in MCESI's territory. In its Answer, Doosan admits that AS § 45.45.710-790 apply to the parties' contractual relationship. The simple factual issues in the case will revolve around Doosan's allegation that it did not terminate the agreement and that it did not substantially alter MCESI's competitive situation by appointing Craig Taylor as a competing Doosan dealer in Alaska.

Doc. 29 at 6 (footnote omitted). "In its Answer and Counterclaims," "Doosan alleges that MCESI did not use its best efforts to promote Doosan products during 2014. The basis for this allegation is MCESI's relationship with JCB, another equipment manufacturer." Doc. 31 at 6 ¶ 30; MC415-013, doc. 22-1 at 2 n. 3 (Doosan illuminating its counterclaim that MCESI failed to use its best efforts to promote Doosan's products when it commenced promoting JCB's).[5]

---

[5] Doosan also "denies that it terminated the Agreement and denies that MCESI has any legitimate statutory or common law claims against Doosan arising out of the Agreement or otherwise. To the contrary, MCESI resigned as a dealer and -- as set forth in Doosan's Counterclaim -- MCESI breached its obligations to Doosan under the Agreement starting long before its resignation." CV115-007, doc. 1 at 40. More specifically, it contends that: "(1) MCESI improperly sold competing JCB equipment during 2014; and (2) because MCESI improperly sold JCB equipment it did not use its best efforts to sell Doosan equipment during 2014." Doc. 29 at 19.

In fact, Doosan views the litigation in a more complex manner. It insists that MCESI terminated the relationship based on pretextual grounds so it could further its longstanding plan to sell competing JCB products. CV115-007, doc. 5 at 3; *see also id.* at 3-4 (recounting MCESI's alleged duplicitous conduct and insisting that "MCESI has inflicted injury on Doosan as set forth in Doosan's Counterclaim."). It thus wants information from JCB (hence, its subpoena and JCB's quash motion here) to uncover information if not evidence on that score. And, it reminds (in urging transfer here), it is moving the Alaska court "to compel MCESI to produce documentation of its relationship with JCB." MC415-013, doc. 22-1 at 2.

The picture is even more nuanced given MCESI's insistence that in 2013 it told Doosan that it had been "pursuing an arrangement with JCB to provide MCESI with a line of mini equipment that would

---

MCESI, which calls its agreement with Doosan an "adhesion contract," *id.* at 21, denies any breach. *Id.* at 23. In fact, it contends, the agreement excluded competitive products which MCESI sold prior to the effective date of the agreement, and that includes JCB. *Id.* at 23-24; *see also id.* at 27-28 (Doosan also failed to give proper contractual notice of any claimed breach). Even so, MCESI only sold *non-competing* JCB equipment. *Id.* at 24. And, despite Doosan's active promotion of CTE, MCESI's 2014 sales performance met mutually agreed performance forecasts. *Id.* at 24-25. Indeed, MCESI points out, Doosan offered MCESI a 2015 Dealership Agreement just before MCESI sued it. *Id.* at 28 n. 29.

*not* compete with MCESI's existing Doosan equipment."[6] CV115-007, doc. 31 at 6 ¶ 31 (emphasis added). A Doosan representative, claims Miller, "responded [that] it would not be a problem and he might have a few questions." *Id.* Miller welcomed them, but heard no further, so MCESI "understood that to mean there was no problem." *Id.* And in fact, Miller emphasizes, "MCESI never sold any JCB equipment "that competed with Doosan in its inventory during [2014 and the first six months of 2015]. During 2013 and 2014 MCESI never actively marketed any competing JCB equipment." *Id.* ¶ 34.

Indeed, MCESI further emphasizes, Doosan -- prior to filing its Answer -- "*never* raised any issue with MCESI's representation of JCB's mini equipment line." Doc. 31 at 7 ¶ 39 (emphasis added). Nor did it complain about MCESI's sales performance during 2014. *Id.* ¶ 40. Yet, Doosan now raises unfair trade practices and trademark infringement counterclaims. Doc. 29 at 6; doc. 5 at 36-39. Again, it served its Rule 45 subpoena on JCB to uncover information about the

---

[6] It says in its summary judgment brief that "MCESI became a JCB dealer in October, 2013, *prior* to the January 1, 2014 Effective Date of the 2014 Dealer Sales Agreement between MCESI and Doosan." Doc. 29 at 11. MCESI points out that Doosan "has several other dealers in the United States which also represent and sell JCB Equipment." *Id.* at 12.

MCESI/JCB relationship.[7] MC415-013, doc. 1 at 29-110. And JCB, in turn, moves to quash it.[8]

## II. ANALYSIS

Rule 45(f) was revised in 2013:

---

[7] Boiled down, Doosan wants to uncover information about MCESI/JCB dealings before the MCESI/Doosan divorce. MC4-15-013, doc. 1 at 37 (Doosan's 30(b)(6) Topic # 1: "Any agreement, prospective or actual, between JCB and MCESJ whereby JCB has authorized JCB to market, sell, and service products manufactured by JCB"; Topic # 7 "The marketing strategies of MCESI or JCB for competing against Doosan in Alaska"); *see also id.* at 1-2 (JCB's interpretation: "The Subpoena commands JCB to produce eight categories of documents by August 14, 2015, and to appear for its deposition on August 21, 2015 prepared to testify regarding eight categories of information virtually identical to the document requests.").

Resisting this, JCB argues that Doosan is a competitor exploiting federal discovery to extract otherwise irrelevant and ultimately inadmissible (and competitive, proprietary) data from it. Doc. 1 at 1-4; *see also id.* at 4 ("JCB and Doosan are direct competitors of one another"). JCB represents that, in an effort to informally resolve this matter short of litigation, it informed Doosan's counsel that the subpoena was "unduly burdensome and overly broad and seeks documents and information that are both commercially confidential and, according to [JCB's] understanding of the Lawsuit, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence." Doc. 1 at 2.

[8] From the conclusion of JCB's quash brief:

> The Subpoena fails to comply with the content requirements under Rule 45, as it does not set out subsections (c.) or (d) of that Rule, and is therefore invalid and unenforceable. The Subpoena is overbroad and unduly burdensome as it contains no meaningful limitation on content and no limitation whatsoever on custodians. The Subpoena seeks irrelevant and confidential information. Doosan and its attorneys have failed to take reasonable steps to avoid imposing undue burden and expense on non-party JCB, including, without limitation, by seeking the documents and information from MCESI. As such, JCB seeks an award of its attorneys' fees and costs.

MC415-013, doc. 1 at 25.

> Prior to the [Fed. R. Civ. P.] 2013 amendments, subpoenas for depositions or production of documents were issued from the court for the district where compliance is required, and the power to quash or modify any issued subpoenas was reserved to that court. The 2013 amendments changed that structure. Under the new rule, "[a] subpoena must issue from the court where the action is pending." Fed.R.Civ.P., Rule 45(a)(2). The new rule provides the court where compliance is required with the power to adjudicate a motion to quash or modify the subpoena. *See* Fed.R.Civ.P., Rule 45(d)(3). But the new rule also provides a vehicle for transferring such motions to the issuing court: "When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed.R.Civ.P., Rule 45(f).

*Agincourt Gaming, LLC v. Zynga, Inc.*, 2014 WL 4079555 at *6 (D.Nev. Aug. 15, 2014) (cite omitted). MCESI does not consent here, so Doosan must show exceptional circumstances:

> In the absence of consent, the court may transfer in exceptional circumstances, and the proponent of transfer bears the burden of showing that such circumstances are present. The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.

Fed. R. Civ. P. 45(f) advisory committee's note (2013).[9]

Courts faced with a transfer motion "must account for the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." *Google, Inc. v. Digital Citizens Alliance*, 2015 WL 4930979 at * 2 (D.D.C. July 31, 2015) (quotes and citation omitted). They also "must balance the interest of local resolution against factors such as judicial economy and risk of inconsistent rulings." *Venus*, 2016 WL 159952 at * 3 (citing *Agincourt*, 2014 WL 4079555 at * 7 (because similar discovery issues in issuing district had

---

[9] Where a case is transferred, cost-minimizing features are deployed:

> If the motion is transferred, judges are encouraged to permit telecommunications methods to minimize the burden a transfer imposes on nonparties, if it is necessary for attorneys admitted in the court where the motion is made to appear in the court in which the action is pending. The rule provides that if these attorneys are authorized to practice in the court where the motion is made, they may file papers and appear in the court in which the action is pending in relation to the motion as officers of that court.
>
> After transfer, the court where the action is pending will decide the motion. If the court rules that discovery is not justified, that should end the matter. If the court orders further discovery, it is possible that retransfer may be important to enforce the order.

Fed. R. Civ. P. 45(f) advisory committee's note (2013); *see also Argento v. Sylvania Lighting Servs. Corp.*, 2015 WL 4918065 at * 7 (D. Nev. Aug. 15, 2015) ("Rule 45(f) itself expressly provides that a subpoenaed party does not need to obtain out-of-state counsel in the event of a transfer.").

been briefed, the danger of inconsistent rulings therefrom weighed in heavily in favor of transfer)); *Valle del Sol, Inc. v. Kobach*, 2014 WL 3818490 at * 4 (D. Kan. Aug. 4, 2014) (exceptional circumstances found where similar issues arose in discovery in multiple districts, thereby creating the risk of inconsistent rulings)).

Here, the above factual recitation unmistakably shows that JCB either is or is not intricately involved in the District of Alaska case -- depending on which way that court rules on the still-pending partial summary judgment motion filed by MCESI, as well as Doosan's still-pending motion to compel MCESI to produce, *inter alia*, "documents regarding its communications and relationship with JCB." CV115-007, doc. 46 at 2. That court alone must interpret the meaning and reach of the above-excerpted Alaskan statute, including what constitutes distributor coercion, "best efforts," fair and reasonable repurchase and expense determinations, and so forth. The nature, and thus the relevancy, of the MCESI-JCB relationship comprehensively figures into that court's summary judgment and discovery determinations. And that, in turn, will drive that judge's determination of what JCB data and documents are relevant and thus

necessary to disclose in order to resolve Doosan's motion to compel, MCESI's motion for partial summary judgment, and perhaps even trial on the parties' claims.[10] A potentially inconsistent relevancy determination by this Court would hamper, not assist, the litigation there.[11]

Finally, the internet enables easy access to the Alaska federal court's docket and Rule 45(f) goes out of its way to minimize "distance litigation" in this context. *See supra* n. 9. It thus is fair to conclude that the transfer burden on JCB (no small player on the world's industrial machinery stage) is easily outweighed by the exceptional circumstances that Doosan illuminates.

---

[10] Note that the Alaska federal district court has extended discovery there in part based on how this Court will rule on the quash motion before it. CV115-007, doc. 60 at 2-3. Hence, this proceeding is directly impacting that proceeding.

[11] JCB contends that the Alaska district court at most is determining the relevancy of JCB's documents, and is not being asked to focus on JCB's confidentiality needs. Doc. 24 at 7-8. But in fact it is determining closely analogous confidentiality needs in reaching Doosan's motion to compel MCESI/JCB documents from MCESI. It is but a short step to additionally (and thus efficiently) consider JCB's. More importantly, the Alaska court may well moot much of JCB's concerns by deciding that such documents are just not discoverable (*i.e.*, irrelevant). It can also direct Doosan to first respond to MCESI's summary judgment motion with a Fed. R. Civ. P. 56(d) showing (*i.e.*, show what more it needs, discovery-wise, to rebut MCESI's summary judgment motion). That may well compel Doosan to identity with certainty what it truly needs from JCB. And that, in turn, could assist *JCB* -- it seeks costs upon its contention that Doosan has needlessly burdened it for documents it genuinely does not need.

Transfer of this proceeding to that court therefore is warranted. *Argento*, 2015 WL 4918065 at * 7 (granting transfer because it "advances judicial economy, avoids the potential for inconsistent rulings, and prevents disruption of the management of the underlying litigation."); *Google*, 2015 WL 4930979 at * 5; *Fed. Home Loan Mortg. Corp. v. Deloitte & Touche LLP*, 309 F.R.D. 41, 44 (D.D.C. 2015) (transfer was proper because the underlying case demanded a "nuanced legal analysis based on a full understanding of the [u]nderlying [a]ction," not "a mere relevancy determination," and the minimal burden on local party, if any, was far outweighed by the exceptional circumstances shown); *XY, LLC v. Trans Ova Genetics, LLC.*, 307 F.R.D. 10, 13 (D.D.C. 2014) (transfer warranted where the nonparty was intricately involved with a party to the underlying case and the need for relevance determinations outweighed the minimal burden on the nonparty); *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46-47 (D.D.C. 2014) (transfer motion granted; the issuing court was "in a better position to rule . . . due to her familiarity with the full scope of issues involved as well as any implications the resolution of the motion will have on the underlying litigation").

## III. CONCLUSION

"Courts are in agreement that Rule 45(f) motions to transfer fall within the gambit of non-dispositive matters properly determined by a magistrate judge." *Argento*, 2015 WL 4918065 at * 2; *see also id.* ("The nondispositive nature of the resulting order is not altered by the fact that a Rule 45(f) motion to transfer comes before the Court in the context of a miscellaneous action based entirely on the disputed subpoenas, even though the resolution of the motion to transfer may be dispositive of the miscellaneous action and result in the administrative closing of that case."). The Court therefore **GRANTS** the motion of Clark Equipment Company, d/b/a Doosan Infracore Construction Equipment America to transfer this Miscellaneous Proceeding (MC415-013) to the federal district court in Alaska where the above-captioned case (CV115-007) originated. Doc. 22. Doosan's oral argument motion is **DENIED**. Doc. 17. However, Doosan moved to seal its transfer brief, and that motion, which is unopposed, doc. 23, is **GRANTED** (it meets L.R. 79.7's sealing criteria).[12] To that end, the Clerk is **DIRECTED** to assist the Alaska

---

[12] Doosan explains (and this is unrebutted and unopposed) that its

federal court in accessing (if not physically transferring to it) that document. Finally, and subject to any JCB Fed. R. Civ. P. 72(a) Objection, the Clerk is **DIRECTED** to administratively close this case after it is **TRANSFERRED** to the Alaska federal court.[13]

**SO ORDERED**, this 3rd day of February, 2016.

*/s/ JR Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

Transfer Memorandum [brief] contains information, including dollar amounts, derived entirely from a General Ledger of Miller Construction Equipment Sales, Inc. ("MCESI"). That General Ledger was produced by MCESI to Doosan during discovery in a pending matter before the United States District Court for the District of Alaska, Case No. C15-00007-HRH, and is Exhibit K to the Transfer Memorandum and attached as Exhibit B to the present Motion. That case is the matter in which Doosan served the deposition subpoena that led to the Motion to Quash now pending before this Court. The General Ledger is marked 'confidential" pursuant to the stipulated, signed protective order in that case, a copy of which is attached as Exhibit C. Section 5.4 of that Protective Order requires Doosan to file under seal all material designated confidential.

Doc. 23 at 2. This satisfies Local Rule 79.7(e). *See United States v. Brown*, 2009 WL 1219963 at * 1 n. 2 (S.D. Ga. May 4, 2009).

[13] JCB has a right under Rule 72(a) to Object to the district judge within 14 days after it is served with a copy of this Order. The transfer ordered here, then, is subject to the disposition of any timely filed Objection.